At the beginning of your time, please let us know as you go up to the podium. Please call the first case. Case number 15-21-67-421-8868. Kenneth S. Incorporated v. Barry Kwasny. For argument not to proceed, please stand to your side. Mr. Shorter for the ad hoc. Good morning. I'd like to reserve five minutes of my time for rebuttal. My name is Mike Shorter, and I represent the defendant appellant, Barry Kwasny. In 2004, my client was given an options grant by the president and CEO of Canada, Inc. to induce him to continue his employment as a vice president with the young, struggling company. The options grant is clearly labeled as an options grant. It's personally signed by the president and CEO of Canada, Inc. I have two questions. One, is there any extrinsic evidence that we don't have? The trial court did not allow us to conduct formal... Do you have any extrinsic evidence? Nothing that's not in the record and the affidavit is at the district court. Okay, so it doesn't matter what extrinsic evidence. There isn't any, right? Except what's in the district court. There's an affidavit in the district court from both Mr. Thayer and my client. The second question I have is, suppose we agree with you. What is it your client can do, then? My client can pay one cent per share to buy one percent of the company. Is that subject to one cent a share for one percent or ten percent? Yeah, I believe the options grant clearly states that the amount of the stock is one percent and the price per share is one cent per share. So, to execute his option, he merely has to pay one cent per share to buy one percent of the company. And that's clearly set forth in the options grant. Let me go back to Judge SirHunters' first question so I make sure I understand it because I'm not sure that you two were on the same wavelength. Okay. The question is, if for whatever reason we remanded this case back and directed the judge to take into account extrinsic evidence. In other words, we found the terms of this to be ambiguous because you can interpret subject to in a couple different ways. Do you have other evidence, not that you've put into the record now, but do you have other evidence that you would anticipate developing if this case went back? Well, we'd want to depose the parties and it could be able to get a full explanation from the president and CEO of what his intent was if we go down that path. We could talk to the head of HR. I'm not asking you what you could do. Do you want to more fully develop the record in this case? And if so, what's missing? Well, I think the options grant has all the terms that it needs. I don't think we need to fully develop the record. But if you look at the Imbrogno case, which was a McGonigal case, it talked about if you have an agreement with the essential terms, which I believe this one has, it has essential terms, identifies the parties, the quantity of stock, the price of stock. If there are some nonessential terms, and that's what the court in McGonigal talked about, you can do a fact finding to determine if there were nonessential terms that are required to exercise this option, which I don't really believe there are. Okay, so do you – is it your position that, as you just articulated, the terms of the agreement are clear and unambiguous? Is that your position, or do you argue that they're ambiguous? Because if you argue that they're not ambiguous, then developing the party's intent would not be relevant. Well, I believe the term subject to, as used in this document, is ambiguous. I think there are multiple meanings of subject to, some of which do not create a condition precedent. I do believe, though, that this is an enforceable agreement because it has all of the essential terms. What does this mean in this agreement, that you could exercise this agreement outlining the terms and conditions? What does that mean? Yes. Outlining terms and conditions. If this sets forth all the terms, what additional terms and conditions are you talking about? Well, I don't believe that there are any additional terms or conditions. So you say we disregard that? No, I'm not saying that disregarded at all. I'm saying when you look at this document, it has all the essential terms of price and quantity and identifies the parties in the stock. What it did is it gave the ability to Canada, Inc., if you look closely at the document, it says that they had a right to execute a definitive options agreement outlining the terms and conditions under which such options may be exercised. But if you say that that contains all of the terms and conditions, what you're asking us to do then, and you say there are no other terms and conditions, aren't you telling us to read that language that Judge SirHeinrich just mentioned as surplusage? And doesn't that sort of violate the rules of construction? I don't believe so, Your Honor. What that language does, subject to this agreement outlining the terms and conditions, what it does is it gives Canada, Inc., the ability if it so desired to come up with a subsequent document limited only to the terms and conditions under which the option may be exercised. What does that mean, another document limited to? Well, I'm just reading the language of this agreement. Well, I'm trying to. You've told me that subject to is ambiguous. What does terms and options mean? Well, it says outlining the terms and conditions under which the options may be exercised. That's the language in the document. What that means is if Canada, Inc. was so inclined, it could have created a document putting some details about the means in which it can exercise the option. Does that put the burden on the company or the burden on your client? The burden is on the company. The company is the only entity that could create any further terms and conditions under which the options may be exercised. Let me suggest this to you, and you tell me why this is wrong. Your argument just goes too far, at least in my opinion, unless I hear something different today. If we assume for a second that it's ambiguous, if we agree with you on that, then we have to figure out what to do. If we send it back, you keep saying, well, there's nothing else to do when it goes back, so that doesn't make any sense. Also, ruling for you to say that it's complete doesn't make any sense because it obviates the whole idea of the terms and conditions under which it could be exercised. For all we know, the intent of the parties was he could exercise this stock option as long as he continued to be employed or he had to use it within a day after he got fired or whatever. We don't have any idea what those terms are. So when you say this agreement is ambiguous, yet it's clear and you win, it doesn't make sense. Well, if the term subject to has multiple meanings, some of which create a condition precedent and some of them which don't, I believe the document then is construed against the drafter in that situation where a word can have multiple meanings. That's the only ambiguity that I see, is that subject to can have multiple meanings and then it's construed then against the drafter. As far as those things that you just said, those things can be placed in an options agreement. An options agreement is basically a contract. It could be a very simple agreement like we have here, outlining the price and the quantity and the stock in question, or it can be very complicated. Okay, so you would have us, and you say the only ambiguity is the multiple meanings of subject to, so you would ask us to send it back, and what you want the district court to do then is take evidence on the intent of the parties to discern the intent in drafting the document. Is that it? Well, I don't think that step is necessary. I think we are entitled to judgment as a matter of law. I think the term subject to is ambiguous and would be construed against the drafter. You're just not listening to where we're coming from, are you? Trying. Try harder. So if we get remanded back to the trial court, it could be either if this case gets reversed, we could be granted our summary judgment motion or we could be sent back to trial court. If it goes back to the trial court. But if we don't grant judgment in your favor, I want you to assume that for a second. We're then struggling with you seem to say send it back, but then you seem to say, but it doesn't make any difference when it goes back because there is no other evidence that's relevant in this case. Well, our position is that if it gets remanded back, the court can say, you can do some discovery to look at the intent of the parties. The first thing you do is you look at this document, and this document showed an intent to give my client an option. We could do discovery about... It doesn't show the terms of the option beyond the percentage and the number of shares. In other words, we don't have any idea why the parties never reduced this agreement to a definitive options agreement. The record is silent. We have affidavits from both sides. Neither speak to the main operative question as to you enter into this agreement, and then the guy works there for, what, 10 years longer? There's never a hint in this record as to whether that was ever further discussed, whether there were draft agreements, whether people forgot about it. We have no idea. And the trial court did not allow us to do any discovery. They wanted us to do these briefings. You had a chance to put in an affidavit. You could have put in exactly why there is no agreement. If there is, in fact, an answer from your perspective. I could tell my client's affidavit, I believe, contains his facts about what he was thinking, what he was doing. But because I haven't been able to do depositions, I can't get to the other side's perspective beyond the simple affidavit. Think about when you're sitting down. We don't even have your side's side. Thank you. This is a little tall for me. I'm going to reduce it. If you don't put that down, you're going to disappear there. Yes. Vertically challenged, as they say. Oh, I need to stop. Good morning, Your Honors. Eric Linden from Jaffee, Raitt, Hewer & Weiss, Southfield, Michigan, appearing on behalf of the Appellee Pivotal. I'd like to start out with a couple points, I think in rebuttal to my colleague's argument. One, first of all, in terms of discovery at the district court level, the parties stipulated to allow the court to rule on the motion for summary judgment before they spent a bunch of money taking depositions because they moved for summary judgment at the district court level as well. Neither party, I think, wanted to spend a lot of money taking depositions in Quebec and in Ohio until the court ruled on what both sides at the time thought was a clear and unambiguous document. So what does the term Subject to in the context of this agreement mean? And is it a condition precedent or is it something else? It's clearly a condition precedent, Your Honor. Subject to has a long history, as the case law reflects, of being the typical language a drafter uses to indicate a condition precedent. If this court determines that Subject to is ambiguous, shudders will rummage through the drafting community because that's the language that drafters use. Do you disagree that there are not alternate or multiple meanings of that term that are also present in the jurisprudence? No, I disagree, and let me tell you why, because this is something that wasn't in our brief. Remember, Subject to can be pronounced two ways. It can be subject to or it can be subjected to. So you can be subjected to discrimination, for instance. That doesn't mean that it's a condition. It means that you're under the influence of discrimination, so that the alternate definition... You just added two letters. Pardon me? You just added two letters. You can be subject to discrimination. Either way, it means that you're under the influence of discrimination, not that it's a condition to something, and I think the alternate definitions that the appellant proposes here is the second way to pronounce subject. The district court acknowledged the term Subject to can mean contingent on or it can mean under the influence of some later action. Do you disagree with that conclusion of the district court? Could mean one of two things. I think depending on how the district court meant under the influence of, I might not disagree with that. I think that is much more likely the subject to, the way you pronounce subject to. Now, the case law says that if it can mean two different things, then we look to the intent of the parties. The district court here seems to simply apply to presumption, which is what you're arguing, that subject to always means contingent on, which isn't what the cases say. Well, I think that... So how do we figure out what the intent of the parties was? Well, I think this is just like the Imbrogno case, which is where the options agreement was subject to the compensation committee's determination. This sort of goes to the points that the court was trying to get out of the other side. What will the record reflect if we go back to the district court? And I think the simple answer is there is no record. There are no other, as far as I'm aware, any other... There were no discussions, there were no negotiations, there were no drafting. Just like the Imbrogno case, where it was subject to the compensation committee's basically unfettered discretion as to what the terms and conditions would be of an options agreement, that's what we have here, Your Honor. I think that when it says subject to terms and conditions, what the Imbrogno court said was that that was an illusory promise, and it came up with a bunch of examples of the kinds of things the compensation committee could have done to nullify the grant of options, which is why it found it to be an illusory contract. It said they could have given her zero options. They could have done A, B, and C. They could have waited forever to issue the options. They could have put a strike price on so high that it rendered the options valueless. And there are a lot of terms here that were never discussed that were in the appellant's own testimony, own argument, were solely within the unfettered discretion of my client. Okay, so in light of what you just said, why wouldn't it be prudent to send this case back to the district court and have the district court determine or ascertain the intent of the parties within this setting? Why isn't that an appropriate disposition? Because, Your Honor, I believe there is no ambiguity. Well, there's two reasons for that. I believe there is no ambiguity in the use of the language subject to. Pivotal intended to give itself the discretion to decide when and if and how to issue any stock options to Mr. Kwasi. Both of you argue that there is really no ambiguity, but you come to two different results. Correct, but that doesn't mean that both sides are wrong. I mean, it doesn't mean that one side can't be right and one side can't be wrong, but the District Court obviously found that one side was right and we're asking you to affirm that decision. I think when you have a document which says that Pivotal is pleased to grant, provide you with a grant of options subject to execution of a definitive options agreement, there's only one way to read that, which is that any options agreement is subject to and without that definitive agreement, there are no options. What you're doing is you're reading out any possibility that subject to has a second meaning. I think you both cited Purden under Ohio law, did you not? Correct. So Purden goes on to say, whether a provision in an agreement is a condition precedent is a question of intent. An intent is ascertained by considering not only the language of a particular provision, which is what you're focusing in on, but also the language of the entire agreement and its subject matter. Correct. So the subject matter seems to be, you wanted this guy to stay on as an employee. You said he was going to get a stock option. Now, I agree it says subject to and we have to figure out what that means, but then there's just sort of radio silence in this record after that. Why was there never any discussions? Why did this guy continue to work 10 years  Why did your client not then want to reduce it to writing? We don't know. I think my client's affidavit sheds, it's not directly on point, Your Honor, but my client's affidavit does shed some light on that issue, which is that there were performance issues that my client identified in Mr. Kwasi's performance and his position was eliminated, but he was terminated by my client. It wasn't a voluntary termination. So I surmise, I don't surmise, I actually know, that if my client were to be asked why was there never a definitive options agreement prepared, the answer would be because shortly after he started to work in 2007, there were some performance issues that were identified by my client and I think that's the answer that you will hear if this case goes back to the trial court, but again, I think the language that... This is a curiosity question. How much money are we talking about? I don't know, Your Honor. What is 1% of your company worth? I mean, it could be... I honestly don't know the answer to that question. I think my client is a successful, now, today, a successful credit card processor, not so much thanks to Mr. Quasi's performance, but be that as it may, I think that there is some value there. I don't really know... Substantial value? I think it is worth fighting about, Your Honor. I think that if it wasn't worth fighting about, my client is a businessman and he would have resolved this dispute if it wasn't worth fighting about. I think that's probably a fair way to respond to your question. You seem to suggest that the reason there was no agreement is performance problems. The only mention of performance problems in your client's affidavit is in paragraph 7, where it said that there were myriad performance deficiencies dating back to 2007. This agreement, if I understand it right, is 2004. Correct. That's right. I think the point to make is that there was some period of time between 2004 and 2007 when the performance problems arose, but I believe that the language of this agreement was designed, and whether it's designed or not, the clear, I believe, the clear and unambiguous reading of it is that, and as Appellant says, my client had the sole discretion to decide what those terms and conditions were. And that's his argument on appeal as to why the fault is ours in the sense that there was no definitive agreement ever produced. It was solely in your control. Well, if it was solely in my client's control, my client had the ability then, under that argument, to create any term and condition that it wanted, right? It could have created a term and condition having to do with duration. I don't even understand why it was solely in your client's control. No, I don't get that. If he had come back to you after a year and said, hey, how about this agreement, and your client had imposed a condition on the agreement that made it impossible for him to ever exercise it, his option at that point was to walk. It was to quit, right? Correct. Just like it was when they... There's bargaining power here on both sides. You can propose what the terms are. He can accept and stay, or he can negotiate and change them, or he can quit. Correct. But, again... So how does that put it solely within your client's control? Because that's his argument as to why... This is the good faith argument, that he says, my client did not exercise good faith or fair dealing in drafting an options agreement and therefore should be held responsible, should not be able to rely upon the subject to language in the agreement because it took no steps to satisfy the condition. That's his argument on appeal, which is that... Pivotal had the sole control to decide what those terms and conditions were, and therefore it's not his fault that nothing happened for 10 years. And my response is there's no reason why he couldn't have proposed terms and conditions, and if it really was in the sole control of Pivotal to decide what those terms and conditions were, this case is on all fours, essentially, with the Imbrogno case, where it was solely in the power of the option grantor to decide whether and on what terms and conditions options would be granted. You raised the good faith argument, and I know this is actually for the other side, but was that argument raised at the district court level? The Imbrogno? No, no, the good faith argument. It was not. It was not. I was addressing it in anticipation, but no, that was not an argument that was raised below. I don't understand how you say this is on all fours with Imbrogno. Imbrogno, it says the number of options granted to you will be subject to approval by the company's compensation committee or its designee. You don't even know the number of shares in Imbrogno. Correct. Here we know it's 1% and it's 1 cent. Right, but we don't know when are those shares going to be issued, how are they going to be exercised, the frequency of the grants, the exercise period, the vesting schedule, the conditions to exercise, the effect of termination of employment. All of those are open items for which there is nothing in the record. Do you think price and quantity is just sort of irrelevant? I don't think it's irrelevant, but I don't think that you can base a binding enforceable contract simply because... and an options agreement simply because you have the price and the quantity term because that's not the way options agreements work, and that's why the document says, subject to terms and conditions... My point is the district court relied upon, if I remember right, there was three different cases, and they had different facts, as we oftentimes see. And to the extent that those are binding on us, we're trying to figure out which of those cases this one seems to be closest to. And to say this is exactly the same as Imbrogno is a bit of a stretch, shall we say? I understand that this is a more definitive agreement than the one that was at issue in Imbrogno. I don't dispute that, obviously. But I believe that there are a whole host of terms and conditions, which are standard operating fare in options agreements, which are not addressed by the one-paragraph document that we're fighting about. And that's the reason... So basically this was an illusory promise. That's what the Imbrogno court... That was ultimately its decision, is that... That's what you're claiming your client's offer was, in this case, to grant options. It was an illusory promise. Is that really the position you want to take on behalf of your own client? I think, as it turned out, it turned out to be an illusory promise because there was never any follow-up by either side. Now, Ohio law seems to say that the presumption is against something that's an illusory promise. The presumption is against a condition preceding the way in which you're defining this. Do you agree that that's what Ohio law says? I agree that Ohio law has a presumption against conditions precedent, yes. Because they're trying to avoid forfeitures, basically. Correct. But then, just a moment ago, you said, well, this was just an illusory promise because we used the word subject to. Isn't that exactly what the Ohio law is trying to avoid? Not if it's clear and ambiguous. I mean, again, they try to avoid, and as the courts, I think, recognize below, you can't create a contract for the parties. If the language is clear and unambiguous and susceptible to only one reasonable interpretation, which I submit that's what the district court did here, then it is what it is, and there's nothing to construe. All right. Thank you, Your Honor. Thank you. Mr. Schroeder, perhaps you can see we're struggling with this because neither side's argument seems to carry the day. Well, you asked me about intent when I was up here last, and I left. I believe when you look at the affidavit of my client, it was his belief that he had everything he needed to have an enforceable agreement. They had the ability to... Out of curiosity, if we send this back for all kinds of discovery, it will come out, I suspect. How come in 10 years your client never exercised any of these options or attempted to buy any of this stock? Well, I don't believe that's in the record, but from talking to my client, he was waiting to make sure this company became valuable and went public. I think the intent was always this company at some point in time would go public, and at that point in time his options would have hopefully significant value for him. Well, it may be as simple as the options had no value for the first 8 out of his 10 years. We simply don't know. You can't tell that from the Kwaski affidavit at all. So that's back, I think, to where we were discussing before. If we're trying to figure out what the intent of the parties was, how do we divine that from the record as it's presented to us? Which is why we're saying, isn't there something to develop if it goes back? And then you automatically revert to, gee, you've got everything you need, there's no point in sending it back. And I understand. I understand. And I think we're talking about, you mentioned earlier, Judge, that there was a couple different cases you're trying to figure out which one this falls under, and I think this falls under the McGonigal case, which talked about if you have the essential terms, you can then do fact discovery regarding nonessential but potentially relevant terms. And there's been some talk by opposing counsel of vesting schedules and strike prices and stuff like that. Would it be an essential term to know whether this option could be, whether you had to be in good standing as an employee to exercise this option? If that term was in the contract, that does not have to be. Would that be an essential term? It doesn't. All right. If it was in the contract, it would. It does not have to be in the contract. Would it be an essential term to know how long after you got fired you had the ability to exercise this option? In other words, you get fired, and then you have to exercise it within 30 days, or you can exercise it in 30 years. Would that be an essential term? I don't believe those are essential terms. They could be relevant, but I don't believe they're essential. This, in essence, is a contract, and the parties can choose the terms they put into it. And they chose not to put such terms. So if I agree to buy your house, so we agree on a price for your house, how long I can take to actually close that transaction is relevant but not an essential term. So in other words, I can bind you to sell that house to me, but I can wait 30 years before I actually pay you for the house. If I wanted to make that an essential term, I should put that into the contract. You don't think that is an essential term? I don't necessarily think it's an essential term. Okay. I think if they wanted it to be a term, they had the option to create the contract that way. You can tell I'm trying to come up with an analogy that has such an obvious, seems to me, answer that saying it the other way is just sort of a silly answer, but maybe I didn't do a good enough job on my analogy. No. No. No. I'm sorry. No, no, I'm saying you're fine. No, I understand exactly what you're saying. I've heard that before. You're really making points. What's that? You're really making points here. Yeah. Okay. Anything more you want to tell us? Well, in conclusion, I think this document does have the essential terms of price and quantity. And if you choose the different cases to look at under Ohio law, I think this one very closely monitors McGonigal. And if you look at McGonigal, also missing was the term that you suggested about an exercise period. If you go to the McGonigal case, there was a letter similar to this one. It was missing a price. It was missing an exercise period. And it was also missing the effect of termination of employment. Some questions that you had asked me. Those were all missing from the options letter in McGonigal, but the court still held that there was a non-discretionary promise in that case because it had an amount and didn't have any expressed contingencies in it. So of all the cases. . . And, of course, in McGonigal, the person was offered an agreement and he declined to sign it. He did. So how can you possibly say that case is equivalent to this one? Well, because that subsequent document that came out was never signed and never agreed to, but the court held that that letter was an enforceable promise. All right. One other question. Were you contacted by the circuit mediator? Yes, we were. Did you guys mediate this case? Yes, we did. Would it make sense to try it again from your perspective after this argument? If the other side is willing, we're always willing to talk. That isn't what I'm asking. I'm not asking you what you think he wants to do. Are you interested in it? Absolutely. We're always willing to talk. Are you interested in it, sir? We're, of course. I love overwhelming enthusiasm. All right. Thank you. Thank you.